## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MITSUI SUMITOMO INSURANCE CO., LTD (a foreign corporation) a/s/o SHARP ELECTRONICS CORPORATION, | ) ) ) ) | No.    **FILED: JULY 17, 2008** **08CV4058** |
| Plaintiff, | ) ) | **JUDGE GETTLEMAN** **MAGISTRATE JUDGE ASHMAN** |
| v. | ) ) | Judge    **AEE** |
| LANDSTAR RANGER, INC., a corporation, | ) ) | Magistrate |
| Defendant. | ) ) | |

## COMPLAINT

NOW COMES the Plaintiff, MITSUI SUMITOMO INSURANCE CO., LTD., a Japanese Corporation, as subrogee of Sharp Electronics Corporation, by and through its attorneys, ASPERGER ASSOCIATES LLC, and brings its Complaint against Defendant, LANDSTAR RANGER, INC., a Florida corporation, and in support of its Complaint states as follows:

### JURISDICTION & VENUE

1.      This action arises under 28 U.S.C. §1337(a) and the Carmack Amendment, 49 U.S.C. §14706, and involves a claim in the amount of $30,225, excluding interest and costs, for the loss of goods that were transported via interstate commerce by truck between Romeoville, Illinois, Farmingdale, New York, and Crestwood, Illinois.

2.      The Court has jurisdiction over this lawsuit, and the Plaintiff's claim, pursuant to §14706(d), as the loss occurred in the Northern District of Illinois, and the Defendant regularly conducts its business in the Northern District of Illinois.

## PARTIES

3.    At all times relevant to this Complaint, MITSUI SUMITOMO INSURANCE CO., LTD. ("MITSUI") was a foreign insurance company, with its principle place of business located in Tokyo, Japan.

4.    At all times relevant to this Complaint, SHARP ELECTRONICS CORPORATION ("SHARP") was a manufacturer and distributor of electronic products with offices located in Romeoville, Illinois.

5.    At all times relevant to this Complaint, P C RICHARD AND SONS ("PC RICHARDS"), was a seller of electronic products in New York.

6.    At all times relevant to this Complaint, LANDSTAR RANGER, INC. ("LANDSTAR"), was a logistics, trucking, and transportation services company with its principal place of business in Jacksonville, Florida.

7.    On information and belief, at all times relevant to this Complaint IMEX EXPRESS ("IMEX") was a trucking company located in Illinois.

8.    On information and belief, at all times relevant to this Complaint LMV TRUCKING ("LMV") was a trucking company with its principle place of business located in Crestwood, Illinois.

## THE CARMACK AMENDMENT

9.    On or about July 31, 2006, SHARP agreed to ship three hundred (300) 26" Non-Aquos televisions, model number LC26DV20U ("the SHIPMENT"), to PC RICHARD in East Farmingdale, New York, pursuant to SHARP's bill of lading number 186810, dated July 31, 2006.  *See* a copy of SHARP's Bill of Lading, attached hereto as Exhibit "A".

10.    LANDSTAR and SHARP had a written agreement whereby LANDSTAR agreed to deliver the SHIPMENT to PC RICHARD in Farmingdale, New York. *See* a copy of the Transportation Agreement (hereinafter the "Agreement"), attached hereto as Exhibit "B".

11.    SHARP arranged for transportation of the SHIPMENT through LANDSTAR, and LANDSTAR subsequently entered into an agreement with IMEX, whereby IMEX agreed to transport the SHIPMENT from Romeoville, Illinois to Farmingdale, New York.

12.    IMEX picked up the SHIPMENT from SHARP on August 21, 2006 and subsequently tendered the SHIPMENT to PC RICHARD on August 25, 2006. *See* Bill of Lading with handwritten notation, attached hereto as Exhibit "C"

13.    PC RICHARD refused to accept thirty-nine (39) cartons due to physical damage caused by the shifting of the cargo during transport. Ex. "C".

14.    Pursuant to the terms of the contract between SHARP and LANDSTAR, LANDSTAR was required to return the damaged televisions to SHARP's facility in Texas for examination. However, prior to returning the televisions, LANDSTAR's subcontractor IMEX was required to first obtain a "Return Authorization" from SHARP.

15.    Prior to obtaining the required "Return Authorization," IMEX transported the SHIPMENT to a storage yard owned by LMV in Crestwood, Illinois, where IMEX then transferred the entire SHIPMENT to a storage trailer located within the storage yard.

16.    Upon IMEX's subsequent inspection of the storage trailer on or about October 15, 2006, IMEX's representative discovered that the contents of the trailer were missing, and a police report was filed with the Crestwood Police Department. *See* Police Report Number 06-12639, attached hereto as Exhibit "D".

17.    LANDSTAR, through its subcontractor IMEX, received the SHIPMENT from SHARP on August 21, 2006, in good order with no exceptions noted.

18.    The SHIPMENT was damaged, lost and/or stolen while in LANDSTAR's care, custody and control.

19.    LANDSTAR never delivered the SHIPMENT to PC RICHARD.

20.    On or about April 17, 2007, SHARP submitted a formal claim to LANDSTAR for the loss of the SHIPMENT.  *See* Sharp's Loss and Damage Claim, attached hereto as Exhibit "E".

21.    LANDSTAR also had actual knowledge of the loss:

a)    As indicated by a March 26, 2007 email from Dave Cognetta at Landstar Carrier Services, which referenced the missing televisions (*See* email attached hereto as Exhibit "F"); and

b)    As demonstrated by the fact that Landstar sought to bring an indemnity claim against IMEX for the loss.

22.    At all times relevant to this Complaint, there was in effect federal statute 49 U.S.C. §14706 ("the Carmack Amendment"), which provides as follows:

"Liability of carriers under receipts and bills of lading

(a) General Liability

(1) Motor carriers and freight forwarders.

A carrier providing transportation or service…shall issue a receipt or bill of lading for property it receives for transportation…That carrier and any other carrier that delivers the property and is [sic] providing transportation or service…are liable to the person entitled to recover under the receipt or bill of lading.  The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States…"

Respectfully submitted,

Jeffrey J. Asperger
Peter H. Honigmann
Attorneys for Plaintiff
Asperger Associates LLC
150 North Michigan Avenue, Suite 420
Chicago, Illinois  60601
(312) 856-9901
Email:  jasperger@asplaw.net
Email:  phonigmann@asplaw.net

**STRAIGHT BILL OF LADING - SHORT FORM**
Original-Not Negotiable

RECEIVED, subject to the classifications and tariffs in effect on the date of the issue of this Bill of Lading.

DELIVER ON: 090106 DOCK#:

<< F L O O R   P L A N >>

PKUP BY LRGR 8/23 6PM

SPECIAL SHIPPING NOTES: 186810    BAY- 731

LOAD ID: 162169G0

<< SERIAL NO REQUIRED >>

FROM:

**SHARP ELECTRONICS CORP.**
1300 NAPERVILLE DR ROMEOVILLE IL 60446

CONSIGNED TO DESTINATION:

PC RICHARDS _SONS
150 PRICE PKWY
EAST FARMINGDALE NY 11735

CARRIER: LRGR-L LANDSTAR RAN
S.O.V. NUMBER 9437
MASTER BL 001870774

186810    PAGE   1

BL NUMBER

ENT: 0- NJ
ORD: T    (LAST)

| CUSTOMER ORDER NO. 238613 | DEPT. | DATE 07/31/06 | | | | | |
|---|---|---|---|---|---|---|---|
| NUMBER CARTONS | ITEM CODE SEE BACK | MODEL NUMBER | QUANTITY | SHIPPED | INV | WEIGHT (LBS) | WEIGHT (KG) | DESCRIPTION |

<table>
<tr><td>285 A01</td><td>*</td><td>LC26DV20U</td><td>285</td><td>285 A</td><td>12882</td><td>5843</td><td>26" NON-AQUOS 285AH1</td></tr>
<tr><td>15 A01</td><td>*</td><td>LC26DV20U</td><td>15</td><td>15 A</td><td>678</td><td>308</td><td>26" NON-AQUOS 15AH1</td></tr>
</table>

<<<<    ATTN/PHONE
<<<<    ATTN: TEL: 631 843-4300 FAX: 631 843-4369
<<<<    WAREHOUSE NOTES >>>>
<<<<    CALL FOR DELIVERY APPOINTMENT AS SOON AS B/L IS ISSUED.
<<<<    DO NOT SHIP BY OVERNITE TRANSPORTATION
<<<<    DO NOT SHIP VIA ROADWAY
<<<<    DO NOT SHIP VIA BULLET FREIGHT
<<<<    NO BL CONSOLIDATION ,NO RELAY SHIPPING

SPECIAL INSTRUCTIONS

NO. 100

SHIPPER

IARP ELECTRONICS CORP.,
SHARP PLAZA
MAHWAH, NEW JERSEY 07430

*IARP ELECTRONICS CORP.,
:MANENT POST OFFICE ADDRESS OF SHIPPER
301 Riverplace Blvd, Suite 1100
Jacksonville, FL 32207
-IARP ELECTRONICS CORP.
/O APL Logistics

INV: A-FIRST CLASS    B-FACTORY SERVICED

| | | FRT CODE | ANT.$ | *** SOLD TO *** 102592 PC RICHARDS _SON | | SHIP-TO A/C NO. 102592 | |
|---|---|---|---|---|---|---|---|
| COD REMIT C.O.D. TO: SHARP ELECTRONICS CORPORATION | | | | BL ISSUE DATE 08/21/06 | | | |

| FRT CODE | CARTONS | WEIGHT (LBS) | WEIGHT (KG) | CU. FT. |
|---|---|---|---|---|
| A01 | 300 | 13560 | 6151 | 1313 |
| | 300 | 13560 | 6151 | 1313 |

SHIP FROM    DESTINATION
EQUALS FROM    FREIGHT CHARGE    CH DESTINATION

Prepaid

PLAINTIFF'S EXHIBIT A

JUDGE GETTLEMAN
MAGISTRATE JUDGE ASHMAN
AEE

# TRANSPORTATION AGREEMENT

AGREEMENT made and entered into as of the ___12-1-03___, by and between LANDSTAR RANGER, INC. (hereinafter called "CARRIER") and SHARP ELECTRONICS CORPORATION and all Divisions and Subsidiaries, having corporate offices at Mahwah, New Jersey or elsewhere (hereinafter called "SHIPPER").

## WITNESSETH:

WHEREAS, CARRIER, as an independent contractor, desires to furnish motor carrier service to SHIPPER for the transportation of general commodities and represents that it is a duly authorized contract carrier in interstate commerce under one or more permits issued by the Interstate Commerce Commission, copy (copies) of which are annexed hereto as "Appendix C". CARRIER further represents and warrants that the copy of the permit(s) attached hereto, is a true, correct and complete copy of the permit(s) as in full force and effect as of the date of this Agreement. The CARRIER shall notify SHIPPER immediately in the event of any suspension, cancellation, withdrawal, notification or transfer of the permit(s); any of which shall give SHIPPER the right to terminate this Agreement immediately upon written notice to CARRIER; and

WHEREAS, SHIPPER has special and distinct needs for transportation services and desires to avail itself of such motor contract carrier services;

Now, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto agree as follows:

## 1. SHIPPER'S OBLIGATION

a. SHIPPER agrees to tender to CARRIER at locations throughout the United States, as a contract carrier, and CARRIER agrees to accept from SHIPPER, a series of shipments.

b. SHIPPER agrees to pay to CARRIER the rates and charges set forth in "Appendix A and B", as amended hereto, as full and complete compensation for the services to be provided hereunder. Said rates and charges are intended to apply to all goods shipped or received by SHIPPER and/or third parties for SHIPPER's account from and to all of SHIPPER's shipping and receiving points. The rates and charges as agreed herein will apply on interstate and intrastate and all collect shipments where Sharp is the shipper or receiver. All rates/discounts apply to both prepaid and collect shipments. Rates/discounts apply on all interline points.

c. Rates may be established or amended verbally in order to meet SHIPPER's changing shipping schedules and needs. CARRIER shall immediately confirm each such rate by a signed facsimile transmission or letter to SHIPPER (at Corporate Headquarters in Mahwah, NJ) and said documents shall be annexed to this Agreement as an Addendum to Appendices. SHIPPER shall sign and return a copy of said confirmation to CARRIER.

d. Shipments tendered to CARRIER pursuant to this Agreement shall be subject to the rates, rules and regulations herein or annexed hereto as "Appendix A or B". This Agreement will not be subject to any other rates, rules, charges or published tariffs unless agreed to herein or unless mutually agreed to by both parties in writing and attached hereto as an Addendum to the Agreement.

Page 1



PLAINTIFF'S
EXHIBIT
B



e. In the event CARRIER accepts shipments from SHIPPER or its agents which are not covered by the terms of the Agreement, SHIPPER agrees to pay reasonable rates and charges for such contract transportation based as follows: On Truckload shipments (weight 20,000 lbs. or more), minimum charge will be assessed on the basis of Addendum A's per loaded mile subject to a $550.00 per truckload shipment. On LTL (weighing less than 20,000 lbs.) the applicable freight charges assessed will be discounted at FAK class 85 per loaded mile subject to a handled direct or inter-line d. The LTL rate rate scale will be that agreed to in Appendix A or in minimum charges of $5 per shipment. There will be no restriction as to the application of these maximum charges to this contract. Specifically provided in the Appendices attached hereto. In no instance will the line haul charges on a return shipment exceed those of the outbound shipment.

f. Mileage, with the current version, will be determined through the use of the program PC MILER 2000. Current version, where required, will be determined through the use of the program PC MILER 2000, National Rate applications governed by zip code application will be determined PC MILER 20.00, National 5 Digit Zip Code Mileage Guide.

## 2. CARRIER'S OBLIGATIONS

a. CARRIER agrees to meet the SHIPPER's distinct needs and or special requirements and to provide special tailored service to meet SHIPPER's competitive requirements. CARRIER agrees to provide dedicated equipment and drivers for SHIPPER's exclusive use, multiple pick-ups, and deliveries, scheduled shipping and receiving appointments, specific service routes, spotting of equipment or in transit storage services as may be required on specific orders and as may be outlined in Appendix A.

b. CARRIER shall promptly and efficiently receive, transport and deliver safely and with reasonable dispatch, and without delay, the goods entrusted to it hereunder, whether received from SHIPPER or Third Parties at the request of the SHIPPER. CARRIER agrees to expedite shipments when so requested and deliver them in like good order and condition to the consignee listed in the contracts of carriage.

c. CARRIER shall obtain receipts for all merchandise delivered including order documentation as may be required in the Appendices and issue weight certificates and all such rules or regulations governing the services hereto, or by Federal, State or local laws, SHIPPER, CARRIER agrees to provide copies to be performed hereunder. At the request of substantiate billing for the Service provided. CARRIER shall retain such records for five years after delivery of the involved shipments. or same to SHIPPER in sufficient detail to Federal, State laws, rules or regulations. CARRIER shall retain such records for five years greater period of time as may be required by

d. CARRIER agrees not to use "Substituted Services" by rail, or other motor carriers or brokers for SHIPPER's goods without prior written agreement of SHIPPER.

e. This Agreement shall govern shipments rendered on a freight charges "Prepaid" or "Collect" basis. When shipped "Collect" such charge shall be collected from the consignee. However, in the event that CARRIER is unable to collect charges from consignee after reasonable efforts to collect such charges and billing such shipments, CARRIER may bill SHIPPER for the unpaid freight charges. All such SHIPPER billing must include documentation as to the efforts to collect applicable charges from consignee.

## 3. CARRIER'S EQUIPMENT AND DRIVERS

a. CARRIER agrees to operate its motor vehicle equipment in a legal and lawful manner and further agrees to maintain the equipment in good, safe and lawful operating condition at all times. SHIPPER shall have the right to terminate this Agreement if CARRIER's equipment is not maintained and operated within the limits of the law.

## 6. FORM OF RECEIPT

a. Each incident of transportation of property under this Agreement shall be evidenced by a written receipt in a form agreed to by the parties, signed by CARRIER and SHIPPER showing the kind, quantity and condition of commodities received and delivered by CARRIER at the loading and unloading points respectively. It is agreed by the parties hereto that since it is convenient for SHIPPER to use the Uniform Bill of Lading on shipments transported under this Agreement, said Bill of Lading Receipt is a convenience document and any and all terms and conditions appearing on the reverse side of SHIPPER bill of lading or any other document of receipt are NULL and VOID and shall not be applicable whatsoever, to any shipment transported by CARRIER for SHIPPER. The terms of this Agreement, including those contained in the Appendices, shall govern all terms, conditions, rules and regulations for SHIPPER, CARRIER and all third parties involved in the contract of transportation.

CARRIER's duties and responsibilities under this Agreement shall commence when CARRIER takes possession and control of SHIPPER's property or upon execution of the receipt by CARRIER. With respect to shipments loaded on CARRIER's equipment, possession shall be deemed to have been transferred from SHIPPER to CARRIER when SHIPPER completes the loading of CARRIER vehicles.

## 7. LIABILITY FOR LOSS, DAMAGE OR DELAY TO SHIPMENTS

a. Carrier agrees that, in the transportation of all goods hereunder, it will assume and does assume, the liability of an interstate common motor carrier, as provided in 49 USC 11707, such liability to exist from the time of receipt of any said goods by CARRIER until proper delivery has been made.

b. CARRIER's liability shall be for the original invoice value or the destination wholesale market value of the goods lost or damaged in transit, whichever is higher, whether or not lost or damaged enroute to a purchaser, subject to a maximum amount not to exceed $250,000 per truckload shipment. CARRIER hereby specifically agrees that no claim for loss or damage will be declined based on improper packaging of the goods. Any limitation of liability must be agreed to in writing by SHIPPER and CARRIER and included as an Appendix or Addendum hereto. CARRIER further agrees that no merchandise, damaged or otherwise, may be disposed of on the salvage market without the expressed written consent of SHIPPER.

c. If a shipment is refused by the consignee, or CARRIER is unable to deliver it for any reason, CARRIER liability will be that of a contract carrier and not as a warehouseman, CARRIER further agrees that there will be no storage charges or other fees for the first ten (10) days storage after the shipping date.

d. CARRIER agrees to issue an On Hand Notice for any goods held after ten (10) days from shipping date, with a specific notification for all goods subject to C.O.D. or Order Notify/Sight Draft charges or any other shipment subject to advance payment by consignee.

e. If subsequent to the issuance of an On Hand Notice, freight is returned to SHIPPER, SHIPPER agrees to pay all reconsignment and storage charges as outlined in Appendices hereto. If delivery is made to the original consignee, all storage and reconsignment charges are payable by consignee and SHIPPER will not be responsible for those charges.

f.  CARRIER shall notify SHIPPER immediately by telephone, facsimile or other telecommunication of any accident, theft, hijacking, delay, damage or shortage which impair the safe and prompt delivery of the goods in its control.  CARRIER shall immediately notify SHIPPER by telephone, facsimile or other telecommunication of any refused, damaged or On Hand freight and request additional instructions regarding delivery, storage or disposition of the available goods.

g.  CARRIER acknowledges that SHIPPER may utilize other carriers to facilitate the movement of any such delayed shipment.  In the event CARRIER fails to complete any trip undertaken by it, and SHIPPER or any other person which SHIPPER contracts, completes such trip, CARRIER shall be responsible for reasonable and necessary costs, charges, fees and expenses related thereto.

h.  CARRIER shall return all damaged shipments at its expense to the point of origin or to other points as instructed by SHIPPER.  CARRIER is specifically prohibited from disposing of any damaged goods without the expressed written consent of SHIPPER.

i.  All claims for loss or damage must be filed in writing with CARRIER within nine (9) months of shipping date.  CARRIER must acknowledge in writing, receipt of all claims within thirty (30) days of filing.  All claims so filed, must be settled by CARRIER within ninety (90) days of receipt.

j.  The time limit within which SHIPPER must institute suit against CARRIER to recover on a cargo claim shall be two (2) years and a day from date of shipment.

k.  If SHIPPER is successful in recovering on a cargo claim against CARRIER in a court of law or arbitration proceeding, SHIPPER shall be entitled to recover all of its costs incurred in collecting its claim, including reasonable attorney's fees and interest from the date of delivery or scheduled delivery of the shipment.

l.  CARRIER shall be liable for damage to SHIPPER's property caused during loading by CARRIER's driver notwithstanding the signing of a clear delivery receipt by consignee prior to unloading.

## 8.  INSURANCE

a.  At all times during the term of this Agreement, CARRIER shall carry insurance in the amounts set forth below or the minimum required by the Interstate Commerce Commission, or any Federal, State or local authority, whichever is greater:

L. CARRIER shall be liable for damage to SHIPPER's property caused during loading by CARRIER's driver notwithstanding the signing of a clear delivery receipt by consignee prior to unloading.

## 8. INSURANCE

a. At all times during the term of this Agreement, CARRIER shall carry insurance in the amounts set forth below or the minimum required by the Interstate Commerce Commission, or any Federal, State or local authority, whichever is greater:

| Coverage | Amounts |
|---|---|
| Worker's Compensation | Statutory |
| Employer's Liability | $1,000,000 |
| Public Liability | $1,000,000/$1,000,000 |
| Property Damage | $1,000,000 |
| Automobile Public Liability | $1,000,000/$1,000,000 |
| Automobile Property Damage | $1,000,000 |
| Cargo Insurance | $500,000 |

If required by SHIPPER, CARRIER shall increase the limits of its coverage. Prior to accepting any shipments from SHIPPER, CARRIER shall provide SHIPPER with an insurance Certificate evidencing such insurance and coverage. Such Certificate must include any deductibles named in the policy. SHIPPER, at its option, may request CARRIER to include SHIPPER as a Named Insured with no deductible, for the same coverage as allowed under Common Carrier BMC 32 Endorsement, in the event CARRIER is unable or unwilling to process cargo claim.

b. CARRIER's cargo insurance policies shall not exclude coverage for infidelity, fraud, dishonesty or criminal acts of CARRIER's employees, agents, officers or directors. In the event said policy contains such exclusions, CARRIER shall obtain and furnish a Surety Bond providing such coverage to the satisfaction of SHIPPER.

c. SHIPPER shall be named as an "Additional Assured" on the bodily injury and Property Damage Policies, and "Loss Payee" on the cargo liability policy. The policy or policies evidencing such insurance shall contain a clause that the insurer will not cancel or change coverage of the insurance without first giving SHIPPER thirty (30) days prior written notice, and that the insurer will be liable to SHIPPER for any all damages resulting from insurer's failure to give such notice.

## 9. INDEPENDENT CONTRACTOR

CARRIER shall perform the services hereunder as an independent contractor and shall have exclusive control and direction of the persons operating the equipment or otherwise engaged in such transportation services. CARRIER assumes full responsibility for the acts and omissions of such persons and, when applicable, shall have exclusive liability for the payment of local state and federal payroll taxes or contributions or taxes for unemployment insurance, worker's compensation, old age pensions or other social security and related protection with respect to the persons engaged in the performance of transportation services and agrees to comply with all applicable rules and regulations pertaining thereto. CARRIER, in the performance of its duties and responsibilities under this Agreement, shall employ in the operation of the equipment only competent, able and legally licensed personnel, with the costs and expense to CARRIER. If under the applicable State Unemployment Compensation Law, CARRIER has the right to elect

Page 6

whether or not to come under and be bound by the terms of such law, CARRIER shall either self insure or promptly register under said law.

## 10.  SCOPE OF SERVICE

It is understood and agreed between the parties hereto that this is a non-exclusive Agreement and that CARRIER shall be free to accept freight for transportation from shippers other than named SHIPPER and that SHIPPER shall be free to tender freight for transportation to carriers other than the named CARRIER.

## 11.  NON ALTERATION CLAUSE

Except as otherwise provided herein, the rules, regulations, rates and charges in the Agreement will apply to the exclusion of all other rates, rules, regulations and/or charges published for the account of named CARRIER.

## 12.  VENDORS' PARTICIPATION

It is SHIPPER's intent to provide through this Agreement, a contractual relationship with CARRIER for SHIPPER's vendors and suppliers on shipments transported into SHIPPER's facilities.  All such transportation will be on shipments billed to SHIPPER and/or Third Parties and paid by SHIPPER.

## 13.  TERM OF AGREEMENT

The term of this Agreement shall be for a period of one (1) year commencing with the date shown on page one (1) and shall automatically renew for additional one (1) year period unless written notice of non-renewal is given by either party at least thirty (30) days prior to the end of the term.  All rates and charges in this Agreement are fixed for a period of one (1) year from the effective date of those rates and charges.

## 14.  TERMINATION

This Agreement may be terminated by either party upon thirty (30) days written notice, provided that in the event either party violates any material provisions of this Agreement, the other party shall have the right to immediately terminate the same.  The notice of termination shall be delivered personally or sent via registered or certified mail, return receipt requested.

SHIPPER may terminate Agreement without notice and without further obligation or liability under Section 1, for the following:

1.  If petition for bankruptcy is filed against or by CARRIER or CARRIER becomes insolvent or makes a general assignment for the benefit of creditors.

2.  If all or any portion of the CARRIER's operating authority is revoked, canceled, suspended or discontinued by operation of law or otherwise, or CARRIER's insurance policy is canceled or otherwise invalidated.

3.  CARRIER hereby specifically agrees to notify SHIPPER immediately in the event of revocation or insolvency as outlined in Paragraph 14(1) or (2) above.

## 15.  NON ASSIGNABILITY

Page  7

## 16. CONFIDENTIALITY

As part of the business relationship between CARRIER and SHIPPER, CARRIER may be in or come into possession of Information or data which constitutes trade secrets, know-how, confidential Information or otherwise considered secrets by SHIPPER (hereinafter 'Information'). In consideration of the receipt of such Information and potential business, CARRIER agrees to maintain such Information in the utmost confidence, to use such solely in connection with such business relationship and to take all measures necessary to protect such Information. The details of this Agreement shall be limited to CARRIER and SHIPPER employees, agents and only those necessary to perform services for either party.

## 17. FORCE MAJEURE

Neither SHIPPER or CARRIER shall be liable for damages for any delay or failure to perform any of the terms and conditions of this Agreement arising from causes beyond its control, including but not limited to acts of God or public enemies, acts of civil or military authority, labor disputes, fires, riots, wars or conditions of war, embargoes, accidents, epidemics, floods or other unusually severe weather, closing or obstruction of highways, bridges or ferries, r shortage of raw materials or power, any of which have a material, substantial or adverse effect on either party's ability to perform pursuant to the terms of this Agreement. In the event of such delay or failure, the minimum tonnage provided herein shall be reduced by the proportion such period of delay or failure bears to one year. In the event of a labor dispute at SHIPPER's facilities, CARRIER agrees to provide equipment and normal transportation services.

## 18. FAVORED NATIONS - stricken

## 19. SEPARABILITY

In the event that any phrase, clause, sentence, or other provision contained in this Agreement shall violate any applicable statute, ordinance, rule or law, such phrase, clause, sentence or provision shall be ineffective to the extent of such violations without invalidating any other such provisions of this Agreement.

## 20. NOTICES

Notices hereunder shall be given by U.S. mail, postage prepaid, to the parties at the following addressees:

| CARRIER | SHIPPER |
|---|---|
| Lisa Pate – Vice President | Mark Servidio – VP Logistics |
| Landstar Logistics, Inc. | Sharp Electronics Corporation |
| 13410 Sutton Park Dr S | Sharp Plaza |
| Jacksonville, FL  32224 | Mahwah, New Jersey 07430 |

## 21. ENTIRE UNDERSTANDING

This Agreement and the attached Appendices represent the entire understanding of the parties and cannot be amended except in writing signed by both parties. All prior discussions, understandings, negotiations and Agreements are merged herein. All prior oral or written agreements between the parties are hereby canceled, except as provided herein.

Environmental Impact - This Agreement will not result in an adverse effect on the quality of the human environment.

The provisions of this Agreement shall survive cancellation, termination or expiration of this Agreement.

This Agreement shall be governed by the laws of the State of New Jersey.

IN WITNESS THEREOF, the parties have caused their signatures to be executed by their duly authorized representatives as of the day above written.


**Landstar Logistics, Inc**          SHARP ELECTRONICS CORPORATION

By: _____          By: _____

Title : _Vice President_____          Title  : _____

Date: _11/7/05_____          Date: _____

Page 10

Sharp TL Bid Package 2005_Seasonal Rate_Increase 2004-0901_updated_2005-0910.xls
Accessorials

Accessorial charges should not be a constant. Any accessorial that is a constant in a lane
should be built into the rate for that particular lane. Fuel Surcharge schedules should become
active at $1.40 per gallon based on the Department of Energy's National Average Diesel Fuel
Price Index with rebate eligibility below that level.

**Fee**                          **Charge Basis**
Storage & Handling
Fuel Surcharge                                            (See schedule below)
Unloading Charge
Trailer Per Diem
Detention
Delivery Appointment
Loading Charge
Reconsignment
Driver Assist
Lumper Fee/Charge
Stopoff Charge
Waiting Time Charge
Pickup
Redelivery

|        | Fuel Prices |       | Fuel Surcharge |
|--------|-------------|-------|----------------|
| From   | Thru        |       | per mile       |
|        | 1.41        | 1.469 | $0.01          |
|        | 1.47        | 1.529 | $0.02          |
|        | 1.53        | 1.589 | $0.03          |
|        | 1.59        | 1.649 | $0.04          |
|        | 1.65        | 1.709 | $0.05          |
|        | 1.71        | 1.769 | $0.06          |
|        | 1.77        | 1.829 | $0.07          |
|        | 1.83        | 1.889 | $0.08          |
|        | 1.89        | 1.949 | $0.09          |
|        | 1.95        | 2.009 | $0.10          |
|        | 2.01        | 2.069 | $0.11          |
|        | 2.07        | 2.129 | $0.12          |

Rates Effective  9/1/2004 _2005_

LANDSTAR RANGER, INC
Name:
Title:    Pricing Manager
Date:    Sept. 14, 2004

SHARP ELECTRONICS CORPORATION
Name:
Title:    _Director Logistics Admin._
Date:    _9-20-04_

11/11/2005 16:10 FAX 800882f     SALES ADMINISTRATION     ☑002

**FILE**

## AMENDMENT TO SHARP ELECTRONICS CORPORATION
## TRANSPORTATION AGREEMENT

This amendment and all attachments thereto (the "**Amendment** "), effective on ___11-1-05___, 2005 (the "**Effective Date**") are made a part of the Transportation Agreement (the "**Agreement** ") dated ___DEC. 1, 2003___ by and between Sharp Electronics Corporation ("**Shipper**") OR its designated transportation management representative APL Logistics Americas, Ltd. and its affiliated Broker subsidiaries ("**APLL**") and ___LANDSTAR RANGER, INC.___

("**Carrier**") This Amendment applies only to loads tendered by APLL for outbound shipment of products from various Shipper designated ship sites, which shall include but not be limited to Mahwah, NJ, Memphis, TN and Romeoville, IL ("**Ship Sites**"). In the event of any conflict between the terms of this Amendment and the terms of the Agreement, the terms of this Amendment shall control.

Whereas, the parties now wish to amend and restate some provisions of the Agreement.

NOW THEREFORE, the parties having acknowledged receipt of due and adequate consideration, the parties expressly agree to be bound by the following terms and conditions.

A. Section 1(b) shall be replaced in its entirety with: "SHIPPER agrees to pay to CARRIER the rates and charges set forth in "Appendix A and B" as attached hereto, as full and complete compensation for the services to be provided hereunder. Said rates and charges are intended to apply to all goods shipped by SHIPPER for SHIPPER's account from the Ship Sites (or any substitutions or modifications thereto). The rates and charges as agreed herein will apply on interstate and intrastate shipments where Sharp is the shipper. All rates/discounts apply to prepaid shipments. Rates/discounts apply on all interline points."

B. Section 1(c ) shall be replaced in its entirety with: "Rates may be established or amended verbally in order to meet Shipper's changing shipping schedules and needs. Carrier shall immediately confirm each such rate by a signed facsimile transmission or letter to Shipper (at APLL's offices in Jacksonville, FL) and said documents shall be annexed to this Amendment as an Addendum to Appendices. APLL shall sign and return a copy of said confirmation to Carrier."

C. Section 1 (e) shall be deleted in its entirety.

D. Section 1 (f) shall be replaced in its entirety with: "Mileage, where required, will be determined through the use of then effective PC Miler® Practical Mileage Guide."

E. Section 2 (f) shall be deleted in its entirety.

F. Section 4 (a) shall be replaced in its entirety with: "WHEN LOADS ARE TENDERED BY APLL, Carrier shall invoice APLL at the address listed below promptly following delivery of freight. Payment of each invoice shall be made by SHIPPER within thirty (30) days of delivery with a valid uncontested freight bill. All Freight bills, accompanied by a copy of the bill of lading (#2 Green copy on Prepaid) should be submitted to:
- APL Logistics Americas, Ltd.
- 1301 Riverplace Blvd. Suite 1100
- Jacksonville, FL 32207"

G. Section 7(a) shall be replaced in its entirety with: "Carrier agrees, that, in the transportation of all goods hereunder, it will assume and does assume, the liability of an interstate common motor carrier, as provided in 49 USC 11707, such liability to exist from

Page 1

the time of receipt of any said goods by CARRIER until proper delivery has been made. Notwithstanding anything to the contrary contained in this Agreement, in no event shall Carrier's liability for cargo loss or damage exceed $500,000 per shipment. Nothing contained in this Agreement shall be construed as to render either party liable for any special, indirect or consequential damages."

H.  Section 8(a) Cargo Insurance coverage shall be $500,000 per shipment.

I.  Section 8(a) second paragraph shall be replaced in its entirety with: "Prior to accepting any shipments from SHIPPER, CARRIER shall provide APLL with an insurance Certificate evidencing such insurance and coverage and naming Sharp Electronics Corporation as the Certificate Holder.  Such Certificate must include any deductibles."

J.  Section 12 shall be deleted in its entirety.

K.  Section 14 (1) shall be replaced in its entirety with:  "If petition for bankruptcy is filed against or by SHIPPER or CARRIER or either party becomes insolvent or makes a general assignment for the benefit of creditors."

L.  Section 14 (3) shall be replaced in its entirety with: " SHIPPER and CARRIER hereby specifically agrees to notify each other immediately I the event of revocation or insolvency as outlined in Paragraph 14(1) or (2) above."

M.  Section 13 shall be replaced in its entirety with: "The term of the Agreement and this Amendment shall be for a period of one (1) year commencing on the Effective Date and shall renew automatically from year to year unless thirty (30) days prior written notice of non-renewal is given by either party. All rates and charges in this Amendment are fixed for a period of one (1) year from the Effective Date."

N.  Section 20 shall be supplemented by sending a copy of the Notice to APLL at 1301 Riverplace Blvd. Suite 1100 Jacksonville, FL  32207 Attention:  John R. Butler, Managing Director of Freight Management Services  Facsimile number:  904-858-4575.

O.  Section 18 shall be deleted in its entirety.

P.  Addendum A of the Agreement is hereby deleted in its entirety.

Q.  Appendix A of the Agreement is hereby replaced with the Carrier's rates and accessorial charges that have been agreed to between the parties, and as of the Effective Date are hereby incorporated herein, attached hereto and made a part of this Amendment.

R.  Appendix B of the Agreement is hereby replaced with the Fuel Surcharge program that has been agreed to between the parties, and as of the Effective Date is hereby incorporated herein, attached hereto and made a part of this Amendment.

All other terms and conditions of the current agreement, except as modified in the above manner, shall continue in full force and effect.

Please indicate your acceptance of this amendment by signing both copies in the space provided below and return both copies to Kevin Kenney, Sharp Electronics Corporation, Sharp Plaza, Mahwah, New Jersey, 07430.

Carrier Name  LANDSTAR RANGER, INC.          Sharp Electronics Corporation

BY:  **Ronald E. Currey**                    BY:  _Mark S Servid(c)_
     Print name                                   print name

BY:  _Ronald E Currey_                       BY:  _____
     signature                                    signature

Page  2

TITLE: V.P. Sales Administration

DATE: 11/7/05

TITLE: _____

DATE: _____

Page 3

## APPENDIX A
### Rates and Accessorial Charges

1. Rates are attached hereto as Rate Attachment A and made a part hereof.

2. Accessorial Charges.

| Accessorial Service | Charge | Notes |
|---|---|---|
| Detention with power | $60 per hr | After 2 hours of free time, when a pickup or delivery is not completed and prior notification is made to APLL, detention will be paid at the rate of $15.00 per 15 minute increments. Detention charges will not be prorated for a portion of an increment. If a Carrier arrives more than 15 minutes past the scheduled or rescheduled appointment time detention charges will NOT apply.. Detention charges NOT to exceed $660.00 for any 24 hour period |
| Trailer Storage | $50.00 | per day after 48 hours of free time |
| Loading/unloading | $150.00 | When the driver is asked to assist in loading or unloading prior approval from APLL representative or legible signatur from the customer is required. |
| Lumper charges | Cost | Paid at actual cost - be pre approved by APLL representative receipt must accompany invoice. |
| Mileage authority | n/a | PC Miler (Practical) most current version - no exceptions |
| consignment/diversion | $75.00 | plus out of route miles at $1.30 per mile, plus all other applicable charges |
| Redelivery | $100.00 | per shipment plus all other applicable charges |
| Stop off charges | $85.00 | per stop |
| Truck ordered not used | $250.00 | flat fee each occurrence |
| Fuel surcharge | See attached | Appendix B |
| Team Service | .15 per Loaded mile | All rates are based on single transit time unless otherwise noted. If expedited or team service is requested, a $.15 per mile upcharge will apply. Prior APLL approval required Name of Requestor. |

PLAINTIFF'S
EXHIBIT

C

08CV4058
JUDGE GETTLEMAN
MAGISTRATE JUDGE ASHMAN
AEE

R.D. NUMBER **06-12639**

## MISCELLANEOUS INCIDENT REPORT  CRESTWOOD POLICE DEPT.

| 1. NATURE OF INCIDENT | | | | | | 2 BEAT OF ASSIGN | 3. BEAT OF OCCUR |
|---|---|---|---|---|---|---|---|
| INFORMATION - BURGLARY | | | | | | 6L48 | Z-1 |

| 4. ADDRESS OF OCCURRENCE | | | | HOUSE APT ETC | 5 DATE OF OCCUR. | TIME | 6. DATE REPORTED | TIME |
|---|---|---|---|---|---|---|---|---|
| 4549 W 137TH STREET - LMV TRUCKING | | | | BUSINESS | UNK | UNK | 10/15/2006 | 1226 |

| 7. PERSON REPORTING INCIDENT TO POLICE | SEX | RACE | D.O.B. | 8. HOME ADDRESS | | CITY | 9. HOME PHONE |
|---|---|---|---|---|---|---|---|
| VILKAITIS, GEDIMINAS | M | W | 01/20/70 | 2032 COUNTRY CLUB DR | WOODRIDGE | | 630-915-0645 |

| 10. VICTIMS NAME | SEX | RACE | D.O.B. | 11. HOME ADDRESS | | CITY | 12. HOME PHONE |
|---|---|---|---|---|---|---|---|
| IMEX EXPRESS, INC. | | | | 4549 W 137TH STREET | CRESTWOOD | | 630-541-7805 |

| 13. OFFENDER'S NAME | SEX | RACE | D.O.B. | 14. HOME ADDRESS | | CITY | 15. HOME PHONE |
|---|---|---|---|---|---|---|---|
| UNK | | | | | | | |

**16. NARRATIVE**

VILKAITIS, GEDIMINAS CAME TO THE CRESTWOOD POLICE STATION REPORTING AN BURGLARY TO A TRAILER THAT TH
COMPANY HE IS EMPLOYED WITH WAS RENTING. THE TRAILER WAS PARKING IN THE LOT OF LMV TRUCKING (4549
137TH STREET, CRESTWOOD, IL). IT IS A WHITE TRAILER WITH CRYSTAL LEASING WRITTEN ON THE SIDE, TRAILER 578.
THE LAST TIME GEDIMINAS HAD SEEN HE TRAILER WAS AROUND 9/28/2006. AT THAT TIME IT WAS LOCKED WITH A
SMALL PADLOCK. STOLEN FROM THE TRAILER WERE 39 SHARP 26" LCD TV'S, MODEL NUMBER LC26DV20U, SERIAL
NUMBERS UNKNOWN.
LMV HAD COMPLETED A REPORT ON 10/9/2006, REPORT 06-12251 FOR A BURGLARY TO OTHER TRAILERS IN THEIR LOT.

PLAINTIFF'S
EXHIBIT
D

| 18. ASSISTING OFFICER (PRINT OR TYPE) | STAR NO. | 20. SUPERVISOR APPROVING | | STAR NO. |
|---|---|---|---|---|
| | | J. REVOR | | 372 |
| 19. REPORTING OFFICER (PRINT OR TYPE) | STAR NO. | SIGNATURE | | |
| J. SIBICK | 315 | | | |
| SIGNATURE | | DATE | MONTH | YEAR | TIME |
| J. SB #315 | | 15 | 10 | 2006 | |

# SHARP ELECTRONICS CORPORATION

Page: 1 of 1

Sharp Plaza
Traffic Claims Department Box 11B
Mahwah, N.J. 07430

## Presentation of Loss and Damaged Claim

| | |
|---|---|
| LANDSTAR RANGER<br>779 W HIGHTOWER TRAIL<br>CONYERS GA<br>Attn: Claims Department | Our Claim Number : 58128<br>Carrier Claim # :<br>Claim Amount : 30,225.00<br>Date of Claim : 04/17/2007 |

Shipper              : SHARP ELECTRONICS CORPORATION
Point of Origin      : 1300 Naperville Drive
                       Romeoville, IL 60446-1091
Date of Shipment     : 08/24/2006
Total Number of Cartons : 00300
Total Weight         : 13,560.000
Sub B/L              :
Bill of Lading       : 85186810
Carrier PRO Number   : 9437
Consignee            : PC RICHARDS & SONS
Point of Destination :
                       150 PRICE PKWY
                       EAST FARMINGDALE, NY 11735

*9/10/07 COPY*
*FAXED*
*TO*
*BOB YOUNG*
*@ (800) 872-8503*
*WCD*

*FAXED 0521*

## Detailed Statement Showing How Amount of Claim is Determined

Short:
          39 LC26DV20U at       775.00 each.
Claim# 0000058128
Invoice#: 0094871845 dated 08/24/2006
Sub B/L:
B/L#: 0085186810
Carrier: LANDSTAR RANGER
PRO#: 9437

In consideration of the payment of the foregoing claim to us, we hereby agree to refund to the payor there of such duplicate payment, if any, of this claim resulting from our being unable to produce the original freight bill or bill of lading, it being understood that our liability hereunder, in any event, shall not exceed the amount received by us in payment of this claim. The foregoing statement of facts is hereby certified as correct.

Signature of Claimant : Arlene Bertram

Title : Claims & Adjustments Analyst
Phone :
Fax : (201) 529-9123

**PLAINTIFF'S EXHIBIT**
**E**
tabbies®

PLEASE NOTE: ALL CHECKS, LETTERS AND ACKNOWLEDGEMENTS SHOULD BE FORWARDED TO THE CLAIMS DEPARTMENT - INTEROFFICE BOX # 11B. THANK YOU

**Conley, Catherina**

| | |
|---|---|
| **From:** | Cognetta, David [dcognetta@landstar.com] |
| **Sent:** | Monday, March 26, 2007 11:20 AM |
| **To:** | Conley, Catherina |
| **Subject:** | 8527360 |
| **Attachments:** | 8527360 BP |

Here's the bol/pod for invoice 8527360. As for the return pod on the 39 units you will have to ask the landstar agent that booked this load. The agent is Jeff Secrest at 330-484-2679. The paperwork that is attached to this email is all we have here in corporate, but the agent would have more info as to what happened to the 39 units as this was one of their loads. Thanks and have a great day.

Dave Cognetta
Landstar Carrier Services
904-306-1783
dcognetta@landstar.com



3/26/2007

JUDGE GETTLEMAN

MAGISTRATE JUDGE ASHMAN

AEE

Our Ref:   NYC07-118911
Sharp Ref:   58128

## SUBROGATION RECEIPT

MITSUI SUMITOMO REF. NO.   _____

| | |
|---|---|
| ☐VESSEL LANDSTAR RANGER | POLICY NO. H97-151423 |
| VOYAGE Romeoville/E. Farmingdale | NAMED ASSURED  Sharp Electronics Corp. |
| B/L (s) NO. 186810 | AMOUNT OF LOSS $30,225.00 |

**To: MITSUI SUMITOMO INSURANCE CO. LTD.**

Dear Sirs:

In consideration of your paying me/us the above claim amount in full satisfaction of my/our claim in connection with the above mentioned goods (the Goods), I/we acknowledge that you are subrogated to all my/our rights and remedies in and in respect of the goods as provided by the applicable law and practice state in the Contract of Insurance to govern liability for and settlement of claims.  In the case of total loss, you are entitled, at your option, to take over my/our interest in whatever may remain of the goods it being understood that my/our delivery to you of the document of title relating to the goods shall not be construed as an exercise of such option.

I/W also record that you have authority to use my/our name to the extent necessary effectively to exercise all or any of such rights and remedies; that I/we will furnish you with any assistance you may reasonably require of me/us when exercising such rights and remedies on the understanding that you will indemnify me/us against any liability for costs, charges, and expenses arising in connection with any proceedings which you may take in my/our name in the exercise of such rights and remedies.

- DESCRIPTION OF GOODS -

300 CARTONS TVS

PLAINTIFF'S
EXHIBIT
G
ALL-STATE LEGAL®

CLAIMANT:  Sharp Electronics Corp

SIGNATURE:  *Arlene Bertram*

BY:  ARLENE BERTRAM

DATED:  7/16  20 07    TITLE: *Claims Specialist*